UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WINSTONE MERRELL, individually, and as next of kin of CAMERON DWIGHT MERRELL, deceased, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:21-CV-338-TAV-DCP ) |
| ROANE COUNTY GOVERNMENT, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant City of Harriman's Motion to Exclude Plaintiff's Disclosed Expert Witness Pursuant to Daubert [Doc. 40]. Plaintiff filed a response but did not do so until after the time had lapsed [Doc. 47]. *See* E.D. Tenn. L.R. 7.1(a). The Court has nonetheless considered the response. Defendant also filed a reply [Doc. 49]. For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** the motion [**Doc. 40**].

I.  BACKGROUND

Plaintiff brought this action in his capacity as next of kin of Cameron Dwight Merrell ("Merrell"), who is deceased [Doc. 1-1 ¶ 1]. On August 24, 2020, an employee at a Food City gas station placed an emergency call for an EMS "in regard to an individual who appeared in distress from a drug overdose" [*Id.* ¶ 22]. Shortly thereafter, police officers with the City of Harriman ("City") arrived [*Id.* ¶ 23]. According to Plaintiff, Merrell "displayed outwards signs of medical needs" [*Id.* ¶ 24]. The officers placed Merrell under arrest as opposed to offering him medical

assistance [*Id.* ¶ 25]. The officers threw him "to the ground violently and then handcuffed [him,]" despite his pleas for medical assistance [*Id.*]. The officers transported Merrell to the Roane County Jail, where upon arrival, witnesses reported that Merrell had "seizure like" activity while in the vehicle [*Id.* ¶ 26]. After speaking incoherently, Merrell became unresponsive, and a correctional officer reportedly administered Narcan [*Id.* ¶ 27]. According to Plaintiff, Merrell "was and had been for some time under severe medical distress" [*Id.* ¶ 28]. EMTs transported Merrell to the Roane Medical Center Emergency room, where medical personnel pronounced his death [*Id.* ¶¶ 31–32]. The autopsy revealed that Merrell's death "was due to acute methamphetamine toxicity and the manner of death was determined to be an accident" [*Id.* ¶ 32].

Based on the above, Plaintiff alleges wrongful death, Tenn. Code Ann. § 20-5-106; violations of civil rights, 42 U.S.C. § 1983 (failure to render aid); and intentional infliction of emotional distress.

Relevant to this matter, Plaintiff disclosed Mark Meredith ("Meredith") as an expert. Meredith identifies as a "Police Practices, Premises Security & Drug Recognition Expert" [Doc. 40-1]. He is a retired police patrol sergeant, explaining his qualifications as follows:

> As a Patrol Officer, Detective and Supervisor, and Drug Recognition Expert, I have been trained in proper law enforcement protocol pertaining to the laws of arrest, search and seizure, transportation of prisoners, and evaluation of suspects being under the influence, which included excited delirium. While working in these capacities, I have participated in hundreds of arrests and the subsequent transportation of prisoners. Specifically, I have detained, witnessed, and supervised cases, specific to excited delirium. As a Criminal Investigation Detective, Police Supervisor, and Drug Recognition Expert, I have been trained in the recognition of excited delirium signs or symptoms and proper policy procedures for the transportation of prisoners suspected of exhibiting signs or symptoms of excited delirium.
>
> As a retired Patrol Sergeant, I directly supervised the actions of patrol officers on my shift. Responsibilities included the supervision of arrests and transportation of prisoners, use-of-force

2

> that I have either been witness to, or that are reported to be, by a patrol officer. Additionally, I have conducted investigations into complaints of improper searches, improper treatment, transportation, or escapes of prisoners. Based on the outcomes of these investigations, I have made recommendations for discipline or policy change.

[Doc. 40-1 p. 20]. In a section called "Dangerous Conditions" in his report, Meredith states, "If it is deemed that Merrell would have survived but for the absence of prompt medical care[,] then the officers were a cause of his death" [*Id*. at 24]. Meredith explains that "[t]he standard of care for the City of Harriman Police Officers required Officer Thurman and Officer Kirkland to provide for the proper treatment of a prisoner while they were engaged with Cameron Mitchell" and that the failure to do so "caused this incident" [*Id*.]. He also discusses excited delirium and how to treat and transport prisoners, referencing the policies of the International Association of Chiefs of Police ("IACP") [*Id*. at 24–25]. Meredith concludes as follows:

> 1. Officer Thurman was a reasonably trained police officer who recognized Cameron Merrell exhibited signs of excited delirium.
>
> 2. The actions of Officers Thurman and Officer Kirkland were not objectively reasonable in light of the totality of the circumstances and failed to meet the standard of care for the treatment and transportation of prisoners.
>
> 3. The failure of Officers Thurman and Officer Kirkland to provide or request immediate medical aid for Cameron Merrell was not reasonably prudent for a City of Harriman police officer, violated the standard of care for the treatment and transportation of prisoners, and created a dangerous condition.

[*Id*. at 27].

The City moves to exclude Meredith from testifying at trial pursuant to Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993).

3

## II. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. This standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The inquiry is "a flexible one," and these factors do not constitute a definitive

checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

The court will not "exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4, 2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at 840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

District courts generally have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 375 (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Nelson v. Tenn. Gas Pipeline Co.*, 234 F.3d 244, 248 (6th Cir. 2001). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

### III.   ANALYSIS

The Court has considered the parties' filings in this case, and for the reasons explained below, the Court finds the City's motion well taken in part.

The City asserts that Meredith's proffered testimony is not relevant to this case and it challenges Meredith's qualifications to render opinions relating to Plaintiff's wrongful death claim.[1] With respect to the former argument, the City asserts that Meredith's testimony is not relevant to Plaintiff's § 1983 claim because it does not assist the trier of fact in establishing the City's liability. The City submits that it cannot be held liable for the actions of its employees and that it can only be found liable if it "causes the constitutional violation at issue to occur" [Doc. 41 p. 6 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)]. According to the City, Plaintiff only asserts the failure to render aid claim against the John Doe officers, and therefore, Meredith's testimony cannot establish the City's liability. The City states that "[a]ll of the evidence in the record supports the opposite position; that [the] City had a policies and procedures manual in place,

---

[1] Plaintiff alleges two state law claims: (1) intentional infliction of emotional distress, and (2) wrongful death. The City asserts that Meredith's testimony is also not relevant to Plaintiff's intentional infliction of emotional distress claim. Plaintiff, however, "does not intend to solicit Mr. Meredith's opinion testimony of this claim" and states that "there is no need to have Mr. Meredith excluded on these grounds" [Doc. 47 p. 7]. In light of Plaintiff's representation, Court does not need to address this claim.

6

Case 3:21-cv-00338-TAV-DCP   Document 55   Filed 04/19/23   Page 6 of 14   PageID #: 445

all officers were made aware of it and received training on it, and a supervisor arrived on scene shortly after the seizure of Cameron Merrell and instructed that Cameron Merrell be transported to the jail while he stayed at the scene to investigate the matter further" [*Id*. at 7–8 (citations omitted)]. Citing to Meredith's report, the City states that he intends to testify as to the standard of care for the City's officers and that "Officer Thurman was a reasonably trained police officer" [*Id*. at 8]. The City maintains that Meredith's "statements support the same position as the evidence currently on the record" and that it "cannot be found liable on a municipal liability theory under § 1983 because it was not the City's policy, supervision, or training that caused Cameron Merrell's injuries but rather the arresting officers' actions that fell beneath the City's standard of care" [*Id*. at 8–9]. Further, the City notes, "At no point throughout Mr. Meredith's report does he state that the City had an established policy, custom, or supervisor that guided the arresting officers to behave in a way that was 'deliberately indifferent' to Merrell's constitutional rights" [*Id*. at 9]. The City adds that if Plaintiff sued the individual officers, Meredith's testimony may be relevant, but he did not. In its reply, the City reiterates that "Meredith fails to offer any opinions related to the policies and procedures or customs of the City of Harriman Police Department, the supervision or training of the involved officers by the City or any other factor that could result in liability on the part of the City" [Doc. 49 pp. 2–3].

Plaintiff responds that Meredith's expert opinion testimony is relevant to the § 1983 claim because it does assist the trier of fact in establishing liability against the City [Doc. 47 p. 3]. According to Plaintiff, "the foundational questions in this matter are whether the arresting officers were inadequately trained to handle situations such as this one by the City of Harriman and whether that insufficient policy of training on [the City's] part is enough to establish municipal lability against [it]" [*Id*. at 5].

The Court has reviewed Meredith's expert report and finds that Meredith's testimony is relevant to the issue of the standard of care for the proper treatment of persons in an officer's custody. "The requirement that testimony be relevant stems from the portion of Rule 702 which demands the testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 859 (W.D. Mich. 2008). (quoting *Daubert*, 509 U.S. at 591). This means that there must be a "'fit' between the testimony and the issue to be resolved by the trial." *Id.* (quoting *Daubert*, 509 U.S. at 591) (citations omitted). "Expert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. "Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020). Further, "when analyzing the relevancy of expert testimony, a court should consider the elements that a plaintiff must prove." *Id*.

In Plaintiff's Complaint, he alleges a § 1983 claim stating that the John Doe Defendants knew that Merrell was injured and under medical distress but chose to ignore his condition and transported him to jail [Doc. 1-1 ¶¶ 43–44]. Plaintiff further alleges that the City has a duty to train the John Doe Defendants to seek medical care for subjects in their custody who are injured or display physical distress and that "[t]he callous actions of the [John Doe] [D]efendants are direct evidence of the City's . . . failure to train, supervise, and discipline" [*Id*. ¶ 46]. Here, Meredith opines about the standard of care required of officers when engaging with a person in custody and how the officers' actions fell below that standard. In *Lawler v. Hardeman Cnty., Tenn.*, No. 1:19-CV-1174-STA-TMP, 2022 WL 4554430, at *7 (W.D. Tenn. Sept. 29, 2022), the court addressed a similar issue wherein the expert testified to the inactions and actions of a non-party. The defendants argued that whether the non-party "acted below the standard of care in providing care to the [d]ecedent is irrelevant as to whether [the county's] policies caused a constitutional

8

deprivation." *Id*. The court disagreed noting that "in the Sixth Circuit[,] a plaintiff does not necessarily have to show individual liability in order to show municipal liability." *Id*. (collecting cases).[2]

Similarly, in his expert report, Meredith discusses the actions and inactions of officers who are not named in this lawsuit, and his opinion relates to whether there was a constitutional violation. Before determining whether a municipality can be liable for the actions of its employees, there first must be a constitutional violation. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("Nevertheless, our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well."). As the Sixth Circuit has acknowledged, "[T]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott*, 205 F.3d at 879); *see also Przybysz v. City of Toledo*, 746 F. App'x 480, (6th Cir. 2018) ("As a threshold matter, there can be no municipal liability under *Monell* when there is no constitutional violation"). Given Meredith's opinion regarding the standard of care, the Court does not find it excludable pursuant to Rule 702 or *Daubert*. Therefore, the Court will allow Meredith to offer expert opinions on this matter to the extent those opinions are relevant to any claims remaining against the City in the wake of the Court's decision on the City's pending Motion for Summary Judgment.

---

[2] In *Lawler*, the court later acknowledged the defendants' "correct" arguments that the non-parties' "acts and omissions do not impose vicarious liability on her governmental employer[.]" *Lawler*, 2022 WL 4554430, at *7. The court noted that the plaintiff had pleaded that the county and the employees were deliberately indifferent and that the expert testified as to what she viewed as the county's practice and custom, rendering her testimony relevant as to the county's liability. *Id*. Meredith does not appear to offer similar testimony here. In its dispositive motion, however, the City argues that Plaintiff has not shown that its policies or procedures caused the alleged constitutional violations [*See* Doc. 28]. Thus, the Court will address the City's argument when ruling on the dispositive motion.

9

The parties agree that the City cannot be held liable under a respondeat superior theory. *Monell*, 436 U.S. at 691. The Court notes that a plaintiff asserting a § 1983 claim against a municipality must establish that it had a policy or custom that was deliberately indifferent to the party's constitutional rights. *Id*. Specifically, "a plaintiff must identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept't*, 8 F.3d 358, 364 (6th Cir. 1993). A plaintiff can also establish municipal liability based on a theory of failure to adequately train or supervise its employees. *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 386 (6th Cir. 2018). The City's argument, however, is essentially that Meredith cannot establish Plaintiff's case against it, which is more appropriately raised in a dispositive motion as opposed to a *Daubert* challenge. *See One Beacon Ins. Co. v. Broad. Dev. Grp., Inc.,* 147 F. App'x 535, 545 (6th Cir. 2005) (explaining that there is no requirement that every expert witness's testimony must establish liability); *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 772 (S.D. Ohio 2015) "[T]here is no requirement that the unitary testimony of every expert witness must establish liability conclusively in a case.").

The City further asserts that Meredith does not have the requisite qualifications to form an opinion as to the wrongful death claim. Outlining the elements of establishing a wrongful death claim, the City states that Plaintiff's wrongful death claim is based on the following allegations:

> 37. Instead, the individual defendants placed the Deceased into a positional asphyxia situation, and raced to the jail.
>
> 38. The City has a duty to train the individual defendants to seek medical care for person who are injured while in the custody of its officers. The City also has a duty to ensure that it supervised the individual defendants to ensure they seek medical care for person who are injured while in the custody of its officers[.]

10

[Doc. 41 p. 10 (citing Doc. 1 ¶¶ 37-38)]. According to the City, Meredith "does not state that he has any education, experience, training or background in medical treatment, medical causation, medical diagnosis, or in summary, anything to do with determining what injury might exist and/or what caused said injury to exist" [*Id.*]. Contending that Plaintiff's principal allegation against it is that its officers failed to render aid and placed Merrell in a positional asphyxia situation, the City states there is no evidence in the record to support this theory and that "Meredith is not qualified to offer any opinions dealing with Cameron Merrell's cause of death" [Doc. 41 p. 11].

Citing to his response in opposition to the motion for summary judgment, Plaintiff states that it is not necessary to "present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated when a plaintiff's Fourteenth Amendment claim of inadequate medical treatment arises from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention" [Doc. 47 p. 6]. Instead, Plaintiff asserts, he only needs to show that Merrell experienced the need for medical treatment that was ignored. Turning to Meredith's expert report, Plaintiff states that the subject matter of his testimony relates to the "dangerous conditions and the standard of care that is due of the City of Harriman['s] [p]olice officers" [*Id.*]. Plaintiff denies that Meredith needs "to be a medical professional to opine on the adequacy of the arresting officers' actions in handling this person who was suffering from excited delirium" [*Id.*]. Plaintiff adds that in light of Meredith's "experience and training as a long-term official in this field and his knowledge of the specific nature of this medical event, [he] can assist the trier of fact in understanding the model responsive actions of a police officers in cases of excited delirium and how the City's . . . officers [who] arrested Mr. Merrell did not take proper or reasonable actions in this instance" [*Id.*].

The City replies that because Meredith is not qualified to diagnose excited delirium, he cannot testify that the officers breached a duty owed to someone who is suffering from excited

11

delirium.  The City maintains that the only medical evidence in the record reveals that Merrell died from an overdose.

The Court finds Meredith cannot testify as to any medical causation of Merrell's death as he is not a medical professional.  *Lawler*, 2022 WL 4554430, at *9 ("Because "cause of death" is a highly technical concept and term of art, typically only physicians, medical examiners, or others with the specialized scientific training required to render causation opinions are qualified to opine on a "cause of death.").  Plaintiff states that he can testify as to the "model responsive action of a police officer in cases of excited delirium" and how the arresting officers did not take proper or reasonable actions [Doc. 47 p. 6].  The problem with Plaintiff's argument is that Meredith appears to be diagnosing Merrell with excited delirium.  As noted by the Eleventh Circuit, "excited delirium is a widely accepted entity in forensic pathology and is cited by medical examiners to explain the sudden in custody-deaths of individuals who are combative and in a highly agitated state." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1299 n.4 (11th Cir. 2009), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing Carolyn B. Robinowitz, MD, Report of the Council on Science and Public Health 453 (American Medical Association, annual meeting 2009)).  Recently, the Eastern District of Missouri analyzed whether non-medical experts could testify about excited delirium.  *Lombardo v. Saint Louis City*, No. 4:16-CV-01637-NCC, 2019 WL 414773, at *13 (E.D. Mo. Feb. 1, 2019).  While noting that in some instances "courts have referred to non-medical examiner testimony regarding excited delirium," the court explained that it "seem[ed] to be most often discussed in relation to a pathologist/medical examiner's conclusion." *Id*. (citation omitted).  "Without deciding the question of whether excited delirium is a proper medical diagnosis and otherwise a generally accepted topic for expert opinion," the court excluded the experts' testimony because the defendants failed to establish that the experts were "qualified by their knowledge, skill, experience, training, or education to testify about excited

delirium." *Id*. Here, Meredith defines "excited delirium" as a "medical disorder" [Doc. 40-1 p. 24], but whether or not it is a medical disorder, Plaintiff does not explain Meredith's qualifications to testify about excited delirium. Moreover, the Court has reviewed Meredith's expert report, and he states that he has "been trained in the recognition of excited delirium signs or symptoms and proper police procedures for the transportation of prisoners suspected of exhibiting signs or symptoms of excited delirium" [Doc. 40-1 p. 20], but he does not explain what training he received and when he received it. Thus, the Court will exercise its gatekeeping function by excluding Meredith's conclusions regarding excited delirium. *Lombardo*, 2019 WL 414773, at *15.

As the City has summarized, a plaintiff must establish the following elements in a wrongful death action: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; and (3) an injury or loss; (4) causation in fact; [and] (5) approximate or legal cause" [Doc. 41 pp. 9–10 (citing *McCall* v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995))]. But Plaintiff states that Meredith's testimony relates to dangerous conditions and the standard of care [Doc. 47 p. 6]. Given that the standard of care is one of the elements of this claim, the Court will allow Meredith to testify about the "model responsive actions of police officers" [*id*.] where a suspect is exhibiting unusual behavior. *See Lombardo*, 2019 WL 414773, at *15 (allowing the non-medical experts to testify about "behaviors [that] would be recognized to [a] lay person," but prohibiting them from "provid[ing] the ultimate conclusion that any such behaviors demonstrated [that the deceased] was in a state of excited delirium"). As allowed in *Lombardo*, the Court will allow similar testimony here.[3]

---

[3] The Court further notes Plaintiff should ensure that Meredith does not offer any legal conclusions at trial. Whether testimony is excludable under the Federal Rules of Evidence often depends on the "presentation of the expert's testimony at trial." *United States v. Am. Elec. Power Serv. Corp.*, No. 2:99-CV-1182, 2005 WL 6059298, at *2 (S.D. Ohio July 6, 2005). To the extent Meredith's testimony at trial either does not conform to the Federal Rules of Evidence or expresses legal conclusions, the City may object at that time.

13

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant City of Harriman's Motion to Exclude Plaintiff's Disclosed Expert Witness Pursuant to Daubert [**Doc. 40**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge